**Affirmed and Majority and Dissenting Opinions filed April 24, 2014.**



In the

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-12-01058-CR

## WILLIAM DAVID KELLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1333908**

## M A J O R I T Y  O P I N I O N

Appellant William David Kelley was convicted for the felony offense of failure to comply with statutory sex offender registration requirements. The jury found one of two sentencing enhancements true and assessed punishment at 20 years. On appeal, he presents six issues, whether: (1) the evidence is legally insufficient to prove appellant intentionally and knowingly failed to timely report to law enforcement, (2) the trial court erred by not finding the evidence legally

insufficient after hearing additional evidence in the motion for new trial, (3) the sex offender registration statute is void for vagueness as applied to appellant, (4) the trial court erred in excluding certain testimony, (5) the trial court erred in charging the jury on the defensive issue of statute of limitations, and (6) the fatal variance between notice and proof violated appellant's due process rights. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with failure to register as a sex offender. The indictment alleged that:

- on or about September 1, 2011,

- while appellant had two reportable convictions for the offenses of sexual assault and indecency with a child, and

- while he was subject to registration under the Texas sex offender registration program,

- he intentionally and knowingly failed to timely report to the local law enforcement designated as his primary registration authority, the Harris County Sheriff's Office (HCSO),

- during a particular 90-day period following September 27, 2010, the date he first registered as a sex offender,

- in order to verify the information in the sex offender registration form maintained by that law enforcement authority,

- to-wit, appellant failed to report to said authority as required during the period beginning August 17, 2011 and ending August 31, 2011.

The indictment included two enhancement paragraphs alleging appellant's prior convictions for aggravated kidnapping in 1982 and 1991.

In August 2010, appellant was incarcerated in the Texas Department of Criminal Justice Institutional Division (TDCJID) and was scheduled for release.

Tammy Sonsel, a TDCJID employee, reviewed appellant's records and determined that he was subject to the sex offender registration requirements of chapter 62 of the Texas Code of Criminal Procedure. Sonsel met with appellant on August 6, 2010, to discuss his registration requirements. Appellant acknowledged that he understood the requirements, which included registering for life, verifying that registration in person every 90 days, reporting to the primary registration authority in person prior to 7 days before moving to a new address, and reporting in person and registering with local law enforcement where the new residence is located within 7 days after the move.

Appellant was released from confinement. On September 27, 2010, he personally met with Houston Police Department (HPD) Officer Jerry McCollum, who was assigned to HPD's sex offender registration unit. McCollum went over the registration rules and notified appellant that his failure to comply could result in felony charges. Following appellant's registration on September 27, 2010, appellant again met with McCollum and verified his registration and status on December 6, 2010, which satisfied the 90-day period scheduled to end on December 9, 2010. Appellant's next 90-day verification period was scheduled to end on March 9, 2011.

Appellant moved to a new physical address—a room at an extended stay motel off the North Freeway. On February 21, 2011, appellant personally met with Deputy Santos Lopez, who was assigned to HCSO's sex offender registration unit, to transfer his verification from HPD's unit. Lopez went over the registration rules and the criminal penalties for failure to comply. Appellant acknowledged that he understood the requirements.

Appellant personally met with Lopez for his next 90-day verification on May 26, 2011. He again acknowledged his understanding of the registration

3

requirements. Appellant's next 90-day verification period was scheduled to end on August 24, 2011. On August 4, appellant called Lopez and scheduled his next verification for September 1, 2011 at 9:00 a.m.[1] Appellant failed to appear for his September 1 appointment.

Appellant's phone records reflect calls placed to HCSO's sex offender registration unit at 9:54 p.m. on August 30, 2011, and at 3:27 p.m., 3:29 p.m., and 4:25 p.m. on August 31, 2011; and calls placed to HPD's sex offender registration unit at 9:55 p.m. on August 30, 2011 and at 3:25 p.m. on August 31, 2011. According to Lopez, appellant did not talk to anyone to explain why he could not make his appointment or to reschedule it. McCollum did not recall receiving a phone call from appellant in late August 2011.

HPD Officer Michelle Burroughs replaced McCollum at HPD's sex offender registration unit in August 2011. Appellant "walked in" without an appointment and attempted to register with Burroughs on September 22, 2011. He indicated that he was unemployed, homeless, and "moving from place to place" within the city of Houston, and provided a new telephone number. According to Burroughs, she did not register appellant because the law requires a definite address, even "a geographical location, 45 under the bridge." Burroughs advised appellant to come back within 7 days, by September 29, 2011, to provide a stable address, and continue to come back every 7 days until he could provide a stable address. Burroughs was out of the office on September 29, 2011. Appellant's name appears on HPD's unit's September 29, 2011 sex offender registration sign-in sheet. Appellant's phone records reflect 8 telephone calls placed to Burroughs' office number from September 26, 2011 to October 3, 2011. Burroughs did not meet

---

[1] Lopez indicated that although appellant "was technically out of compliance" for the 90-day verification period at issue by setting an appointment for September 1, 2011, he had no plans to arrest him for being late.

with appellant again after September 22, 2011.

Margarette Dempsey, a supervisor with the Texas Health and Services Commission, testified that agency records indicate appellant listed an address on Shepherd Drive when applying for food stamps on September 30, 2011. Appellant reported a change of address to the food stamp program on October 25, 2011, to a location on Lanibeth Street.

Terry Smith, a licensed chemical dependency counselor working at a residential treatment facility located at the address on Shepherd, identified appellant as a former client and resident. According to Smith, appellant was referred to the program from the VA hospital, checked into the facility on August 30, 2011, and remained in the program until September 16, 2011; appellant was asked to leave for breaking a program rule. Although VA patients sent to the facility were not supposed to leave for the first 30 days, Smith indicated there are exceptions to take care of medical and legal issues.

Officer Edward Barnot, a detective with HCSO's sex offender registration unit, began investigating appellant on January 13, 2012. Barnot learned that appellant had registered with HPD's sex offender registration unit on September 27, 2010; appellant timely reported his move outside of Houston and began reporting to HCSO's unit on February 21, 2011; appellant timely reported for his next 90-day verification with HCSO's unit on May 26, 2011; appellant was scheduled to report for his next 90-day verification with HCSO's unit on September 1, 2011,[2] and failed to appear for that appointment; and appellant had walked into HPD's unit in September 2011 but the registry did not reflect that and no new address was identified in the database. Barnot attempted to locate

---

[2] According to Lopez and Barnot, the 15-day window for appellant to report in person during the 90-day verification period at issue ran from August 17 to August 31, 2011.

5

appellant at his last registered North Freeway address; appellant was not there.

At trial, Barnot testified regarding records showing that appellant changed his address with DPS to a location on Lanibeth[3] as of September 29, 2011. Also, appellant's Tenaris employment records showed appellant changed his address to the Shepherd address as of September 15, 2011, for purposes of 2011 benefits enrollment, and appellant changed his address with human resources to the Lanibeth address as of November 23, 2011. Appellant also submitted a leave of absence form to human resources at Tenaris for personal medical/FMLA leave starting August 3, 2011, scheduled to end November 4, 2011.

On January 20, 2012, Barnot filed charges against appellant for failing to comply with the sex offender registration requirements based on appellant's failure to show up in person for the September 1 appointment with HCSO's unit and appellant's absence from his last registered address. Law enforcement located and arrested appellant at the Lanibeth address on January 26, 2012.

The jury convicted appellant of failure to comply with sex offender registration requirements, as charged in the indictment. The jury found the allegations in enhancement paragraph one true, the allegations in enhancement paragraph two not true, and assessed appellant's punishment at 20 years' confinement. This timely appeal followed.

## II. ANALYSIS

### A. The evidence is legally sufficient to support appellant's intent or knowledge.

At the close of the State's evidence, appellant moved for an instructed

---

[3] DPS records showed appellant's home address as on "Lambeth," but there is no such street in Houston. There is a Lanibeth Street within the same zip code appellant provided to DPS. Such address falls within the jurisdiction of HCSO's unit.

verdict of not guilty based on lack of intent or knowledge in failing to timely comply, which the trial court denied. In his first issue, appellant attacks the legal sufficiency of the evidence to prove beyond a reasonable doubt that he intentionally and knowingly failed to timely report to local law enforcement. We conclude that this argument lacks merit.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (citing *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)); *see Jackson v. Virginia*, 443 U.S. 318–19, 99 S. Ct. 2781 (1979). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey*, 393 S.W.3d at 768. The jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *overruled on other grounds, Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009). In conducting this review, we are not to re-evaluate the weight and credibility of the evidence, but must act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). "[P]roof of a culpable mental state generally relies on circumstantial evidence." *Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978); *Varnes v. State*, 63 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see*

*Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) ("Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances."). Intent may be determined from a defendant's words, acts, and conduct, and "is a matter of fact to be determined from all of the circumstances." *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).

An individual commits the offense of failure to comply with sex offender registration requirements if he "is required to register and fails to comply with any requirement of" chapter 62 of the Code of Criminal Procedure, entitled Sex Offender Registration Program. Tex. Code Crim. Proc. art. 62.102(a) (West 2013); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."); *see Varnes*, 63 S.W.3d at 829 ("If a convicted sex offender fails to meet any of his or her requirements under the statute, the statute imposes criminal liability on him or her for that failure."). Article 62.051(a) requires a person with a "reportable conviction" to register with "the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days." Tex. Code Crim. Proc. art. 62.051(a). A person who has been convicted of two or more "sexually violent offenses" is required to register at least once "in each 90–day period following the date the person first registered under [chapter 62] to verify the information in the registration form maintained by the authority for that person." *Id.* art. 62.058(a). "[A] person complies with a requirement that the person register within a 90–day period following a date if the person registers at any time on or after the 83rd day following that date but before the 98th day after that date." *Id.*

When the indictment alleges that a defendant "intentionally and knowingly"

8

failed to timely report during a particular 90-day period, we review the record to determine if the State presented legally sufficient evidence of the defendant's intentional or knowing failure. *See Harris v. State*, 364 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Varnes*, 63 S.W.3d at 832 ("Although the sex offender registration statute does not expressly require proof of a mental state for prosecution of a failure to register, the indictment in this case alleged that Varnes 'intentionally and knowingly' failed to register."). "The Texas courts which have reviewed other convictions under Chapter 62 for sufficiency have treated the *mens rea* requirement in the indictments or charges as going to the actual knowledge of the defendant's duty to register." *Varnes*, 63 S.W.3d at 832. Here, the application paragraph of appellant's jury charge substantially tracked his indictment.[4]

An individual acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a) (West 2013). An individual acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). An individual acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

In his brief, appellant acknowledges that the evidence was undisputed. The trial record, for the most part, evidences appellant's historical compliance with the

---

[4] While appellant's indictment alleged that he "intentionally and knowingly" failed to timely report, the jury was properly charged in the disjunctive—"intentionally or knowingly." *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Appellant does not challenge the application paragraph.

sex registration requirements starting with initial registration in September 2010, and then proper verification in December 2010, proper transfer of his registration from HPD to HCSO in February 2011, and proper verification in May 2011. On August 4, 2011, appellant scheduled his next 90-day verification appointment for September 1, 2011. Appellant, however, did not appear for his verification appointment.

Appellant emphasizes the calls placed from his cell phone to the HPD and HCSO's sex offender registration units during the two days before his September 1 appointment. Appellant points to testimony from Lopez and Barnot acknowledging that HCSO's unit does not preserve voicemails. While Lopez did not recall getting any phone message regarding appellant, he noted that two other individuals could have taken a message from him. Appellant thus contends Lopez "admitted the telephone calls are 'evidence' that [a]ppellant did not 'intentionally or knowingly' fail to comply with his reporting obligations." Appellant notes Barnot indicated that notice of a status change could be done by phone. Appellant points to evidence that he was resident at a drug treatment facility starting August 30, 2011, where he could not leave for the first 30 days. Therefore, according to appellant, it was a fair for a rational jury to infer that appellant was calling HCSO's unit to report his new address and changed status of enrolling in a residential treatment program. And it was fair to infer that appellant was calling HPD's unit to register with them as his new reporting agency due to his new address within the City of Houston. Appellant also contends it was a fair inference that when he appeared in person at HPD's unit on September 22 and September 29, 2011, he was trying to comply with the law.

However, considering all record evidence in the light most favorable to the verdict, we cannot agree with appellant that the evidence conclusively establishes a

10

reasonable doubt as to his intent or knowledge with regard to his failure to timely report to HCSO's unit as of September 1, 2011, as required during the period from August 17 to August 31, 2011. *See Laster*, 275 S.W.3d at 517 ("[W]e will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."). The facts show that appellant acknowledged he was familiar with, and complied with, the in-person 90-day sex offender registration requirements on multiple occasions. The trial evidence reveals that appellant knew he had a verification appointment for September 1, 2011, but failed to appear in person.

While appellant suggested that someone at HCSO's unit other than Lopez may have taken a phone message from appellant and perhaps spoken to him or returned his call, the jury as factfinder could have chosen to believe Lopez's testimony that, if that had been the case, "they would have made a note in his file that he'd called and the reason why he didn't make the appointment." Nor did Lopez indicate that calls placed to HCSO's unit on their own would be evidence of appellant's lack of intent or knowledge, but rather agreed that if appellant had "called to let [us] know that there was going to be a problem, it would certainly be evidence[] that he didn't intend not to comply with the sex offender registration requirements." However, nothing in appellant's case notes indicated anything other than he made an appointment to verify his registration and was a "no show." Barnot indicated that while a change of status could be updated by phone,[5] verifying registration and changing address must be done in person. Moreover, according to Barnot, nothing in HCSO's unit's case notes indicated appellant "showed up without an appointment in an attempt to register" during the two-week

---

[5] Barnot also indicated that taking a leave of absence from work to enter a drug treatment program would not necessarily be a change in status.

11

August period at issue.[6]  Barnot also explained, "If [appellant] would have called and said anything of any source, it would have been documented" and he would not have been marked as a "no show."  Finally, while we certainly commend appellant's drug rehabilitation efforts, they do not relieve him of his statutory requirement to timely report within the 90-day period.

The jury, as factfinder in this case, was free to believe Lopez and Barnot and free to infer from the circumstances that appellant had the requisite mental culpability.  We must defer to this determination.  *See Harris*, 364 S.W.3d at 336. Here, the evidence would allow a rational factfinder to conclude appellant intentionally or knowingly failed to register as a sex offender as required by article 62.102(a).  *See, e.g., id.* at 335–36 (evidence legally sufficient for 90-day verification violation); *Grant v. State*, 154 S.W.3d 684, 686 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (same for address change violation); *Varnes*, 63 S.W.3d at 833 (same for failure to report to law enforcement in new jurisdiction within 7 days).  Therefore, we conclude a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly failed to timely report in violation of the sex offender registration requirements.

We overrule appellant's first issue.

**B.    The trial court did not err by refusing to grant appellant's motion for new trial based on legal insufficiency.**

In his second issue, appellant argues that "the trial court erred by failing to

---

[6] Barnot indicated that, as a general rule, appointments are scheduled by phone.  With regard to how HCSO's sex offender registration unit treats individuals who "walk in" without appointments, Barnot stated:

> [E]ither they're going to be seen if they're available to be seen and make whatever changes need to be made that day.  If they're not and their schedule is so busy that they can't do it that day, they'll schedule an appointment for them to come back that day.

find as a matter of law the evidence was insufficient to prove beyond a reasonable doubt that appellant 'intentionally and knowingly' failed to timely report to local law enforcement after hearing additional evidence in the motion for new trial." As part of his motion for new trial, appellant submitted his own affidavit, as well as affidavits from three other individuals.[7] The trial court conducted a hearing and allowed the additional evidence, but denied the motion.

We apply the same standard of review to a trial court's denial of a motion for new trial brought on the basis of insufficient evidence as we do to appellate review of legal insufficiency challenges. *McCall v. State*, 113 S.W.3d 479, 480 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Jackson v. Virginia* standard); *see Chase v. State*, 573 S.W.2d 247, 249 n.1 (Tex. Crim. App. [Panel Op.] 1978). We do not review the denial of the motion for new trial as such; the proper issue on appeal is whether the evidence is legally sufficient to support the verdict. *See Jackson v. State*, 12 S.W.3d 836, 839 n.2 (Tex. App.—Waco 2000, pet. ref'd). "If the evidence meets the standard, it is an abuse of discretion for the trial court to grant the motion for new trial." *State v. Davenport*, 866 S.W.2d 767, 771 (Tex. App.—San Antonio 1993, no pet.) (citing *State v. Daniels*, 761 S.W.2d 42, 45 (Tex. App.—Austin 1988, pet. ref'd)).

Even assuming without deciding, solely for purposes of our analysis, that this additional evidence—none of which was presented to the jury at trial—was

---

[7] In his affidavit, appellant discussed his taking leave from work on August 3, 2011; scheduling his September 1, 2011 appointment with HCSO's sex offender registration unit by phone call on August 4, 2011; being removed from his residence for not paying rent on August 7, 2011; being ordered by the VA to be admitted into drug rehabilitation on August 30, 2011; calling both HCSO's and HPD's sex offender registration units and leaving voicemails explaining his circumstances and providing his new address on August 30, 2011; calling both HCSO's and HPD's units and providing his new address on August 31, 2011, and speaking with McCollum to schedule an appointment with HPD's unit for September 22, 2011; and not meeting with Smith until September 3, 2011. The crux of the other sex offenders' affidavits relates to the difficulty in making an appointment by phone and the "no walk-in" policy.

newly discovered or not presented as a result of ineffective assistance of counsel, the trial court as factfinder at the new trial hearing was free to, and apparently did, judge the credibility of and disregard the additional testimony. *See State v. Shelton*, 869 S.W.2d 513, 518 n.8 (Tex. App.—Tyler 1993, no pet.) (citing *Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990)). Keeping the factfinder's role in mind, as well as the requirement to view the evidence in the light most favorable to the prosecution, our review of the additional affidavits does not diminish the legal sufficiency of the evidence showing appellant intentionally or knowingly failed to timely report. *See McCall*, 113 S.W.3d at 480–81. Therefore, we conclude the trial court did not err in its denial of appellant's motion for new trial. *See id.* at 481.

We overrule appellant's second issue.

## C. The sex offender registration statute is not void for vagueness as applied to appellant.

In his third issue, appellant argues that the trial court erred in refusing to find that the sex offender registration statute was void for vagueness as applied to him. Appellant essentially contends that because the term "report" is so indefinite, it encourages arbitrary and discriminatory enforcement by HCSO's and HPD's sex offender registration units. We disagree.

A statute is void for vagueness when (1) it fails to give a person of ordinary intelligence fair notice of the conduct prohibited or (2) is so indefinite that it encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855 (1983); *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984). Where no First Amendment rights are involved, we examine the statute to determine whether it is impermissibly vague as applied to appellant's specific conduct. *Coronado v. State*, 148 S.W.3d 607, 609 (Tex. App.—Houston

14

[14th Dist.] 2004, no pet.). "When analyzing the second aspect, we focus on whether a statute provides determinate guidelines for law enforcement to policemen, judges, and juries." *Id.* at 609–10. It is appellant's burden to establish the sex offender registration program statute is unconstitutional as applied to him in particular. *Id.* at 609.

Assuming without deciding, solely for purposes of our analysis, that appellant properly preserved this issue for our review,[8] we conclude that our decision in *Coronado* controls and forecloses this issue. There, this court considered whether the sex offender registration statute provides "determinate guidelines for law enforcement." *Id.* at 610. We noted that the statute "is quite explicit in its requirements and enforcement standards" and thus concluded it "does not encourage arbitrary and discriminatory enforcement." *Id.* (citing specifically to now-redesignated articles of chapter 62, including articles 62.053 on prerelease notification, 62.058 on law enforcement verification of registration information, and 62.102 on failure to comply with registration requirements).

As in *Coronado*, the evidence here establishes that law enforcement followed the statute's prescribed guidelines in appellant's situation. *See id.* Appellant was required to report to his primary registration authority to verify his registration every 90 days, on or after the 83rd day and before the 98th day. *See* Tex. Code Crim. Proc. art. 62.058(a). Appellant was aware of this requirement.

_____

[8] When appellant moved for instructed verdict, he alerted the trial court to his intention to file a "continuing motion to declare the statute unconstitutional" based in part on "actual application of the law to [appellant] in this situation." Appellant particularly noted the discretion of officers whether to file charges. Appellant's continuing motion, however, focuses on the punitive nature of the statute and does not reference this argument. The trial court denied the continuing motion. Appellant argued in his motion for new trial that the statute "lacked clarity" in its implementation by law enforcement. During the motion for new trial hearing, appellant also argued that the statute was unconstitutional in its application based on how the registration program is conducted.

Nothing in the record indicates that "report" is not consistently interpreted to require appearing in person to meet with law enforcement. When appellant failed to appear for his September 1 appointment, had not registered with another jurisdiction, and could not be located at his last registered address, Barnot determined that he had violated the statute and arrested him. *See id.* art. 62.102. Appellant has not shown that the statute encouraged arbitrary or discriminatory enforcement as applied to his situation. We therefore conclude that the statute is not void for vagueness. *See Coronado*, 148 S.W.3d at 609–10.

We overrule appellant's third issue.

## D. The trial court did not abuse its discretion in excluding testimony.

In his fourth issue, appellant argues that the trial court erred in excluding testimony from Robert Johnman, offered to impeach Burroughs' testimony regarding HPD's sex offender registration unit's willingness to "work with" sex offenders and "do whatever it takes to get these people registered."[9] The State objected on relevance grounds, and the trial court sustained the objection.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). If the trial court's decision falls within the zone of reasonable disagreement, we will not disturb its ruling. *See id.*

In his offer of proof, Johnman testified that he had been supervised by Burroughs, that he had difficulty scheduling an appointment with her, and that

---

[9] Despite arguing on appeal that Johnman's testimony was relevant to support "the inference that [a]ppellant was prevented from scheduling an appointment in order to verify his registration," when the trial court inquired whether the witness would "testify that he was prevented in some way from making an appointment or complying with his registration requirement as a result of Officer Burroughs," appellant's counsel answered, "No. It's this whole you have to call and make a phone call."

16

once or twice she did not return his call. However, Burroughs herself acknowledged that she tries but at times fails to return offender phone calls. *See* Tex. R. Evid. 613(a) (extrinsic evidence not admitted where witness makes same admission). Further, despite describing a "no walk-in" policy, Johnman—like appellant[10]—was able to provide information to HPD's unit without an appointment and never heard them ask anyone without an appointment to leave. Looking at the entirety of the record, we cannot say that the trial court's decision to exclude Johnman's testimony fell outside the zone of reasonable disagreement. *See Shuffield*, 189 S.W.3d at 793.

We overrule appellant's fourth issue.

**E.  It was error for the trial court to provide an "on or about" jury instruction here, but the error was harmless.**

**1.  Applicable law**

The trial court must give the jury a written charge that sets forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14 (West 2013). We review a claim of jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). We first determine whether there is error in the charge. *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Then, if error is found, we analyze that error for harm. *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

Error preservation does not become an issue until harm is assessed because the degree of harm necessary for reversal depends upon whether such error was

---

[10] Burroughs testified that she saw and took information from appellant regarding his attempt to verify on September 22, 2011, as a "walk-in" without an appointment.

preserved. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If there was error and the appellant objected at trial, we reverse if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm" to the accused from the error. *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). Thus, a properly preserved error will require reversal only if the error is not harmless. *Almanza*, 686 S.W.2d at 171. If the error was not objected to, it must be "fundamental" to be reversible, meaning we reverse only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171).

## 2. Inclusion of the "on or about" instruction here was error.

In his fifth issue, appellant complains of the "on or about" instruction that the trial court provided to the jury sua sponte, over appellant's objection, within the charge. This instruction read:

> You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed,[11] but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time prior to the filing of the indictment which is within the period of limitations. The limitation period applicable to the offense of failure to comply with sexual registration requirements is three years prior to April 17, 2012, the date of the filing of the indictment.

Appellant objected, first, that the State did not provide any evidence of the date of the indictment and, second, that there were "constitutional implications" with regard to this type of offense because it permitted the State to try appellant without specificity and without notice for "any of the dates in between." The State, which had not requested the instruction, referred the court to the "well-established" "on or

---

[11] That is, "on or about the 1st day of September, 2011."

about law."[12] The trial court overruled appellant's objection.

In his brief, appellant argues that the "limitations language" of the complained-of instruction amounts to a defensive issue. *See Howlett v. State*, 994 S.W.2d 663, 667 (Tex. Crim. App. 1999). He further contends that under article 36.14, the trial court should not have instructed the jury sua sponte on such issue because an unrequested strategic defensive issue is not the law applicable to the case. *See Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011).

The statute of limitations for an offense can be a defense to prosecution, and therefore a "defensive issue." In these circumstances, however, the "limitations" instruction was not a defensive issue. To be sure, here the State would be barred from bringing charges against appellant if more than three years had passed since the commission of his registration offense. *See* Tex. Code Crim. Proc. art. 12.01(7) (West 2013). Such a statute-of-limitations argument, if successful, would be a "complete defense" to prosecution. *See Ex parte McFarland*, 632 S.W.2d 621, 623 (Tex. Crim. App. 1982). And the trial court need only instruct on such limitations defense if requested *and* raised by the evidence. *See Howlett*, 994 S.W.2d at 667–68.

However, the trial court always has an "absolute sua sponte duty" with regard to and is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Taylor*, 332 S.W.3d at 488 (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). This duty exists even when the

---

[12] *See Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998) ("Thus, we reaffirm our prior holdings that it is not error, constitutional or otherwise, for an indictment to allege an 'on or about' date for the charged offense."); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) ("It is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period.").

defense fails to object to inclusions or exclusions in the charge. *Id.* at 486. Thus, the question here is whether the inclusion of the sua sponte "on or about" instruction rendered the charge inaccurate with regard to the law applicable to the specific offense charged here. If so, the trial court did not fulfill its responsibility to provide an accurate charge under article 36.14.

The parties have not directed this court to, and we have not located, any cases dealing with the application of an "on or about" instruction in the context of a sex offender registration offense jury charge. However, we find *Taylor v. State*, cited by appellant, instructive. The defendant in *Taylor* was charged by three separate indictments with aggravated sexual assault. The complainant testified to sexually assaultive conduct committed by the defendant both before and after the defendant's 17th birthday. 332 S.W.3d at 485–86. Although the indictments alleged the offenses were committed on dates that followed the defendant's 17th birthday, the trial court's charge instructed the jurors that the State was not bound by the specific dates alleged and that they could convict the defendant if the offenses were committed at any time within the period of limitations. *Id.* at 487–88. Further, the charge did not contain a section 8.07(b) instruction; that is, the jurors were not told that the defendant could not be convicted for conduct committed before his 17th birthday. *Id.* at 486; *see* Tex. Penal Code § 8.07(b) (West 2013) ("[A] person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age . . . .").

The court of criminal appeals found that, under the circumstances, section 8.07(b) was law applicable to the case on which the trial court had a duty to instruct the jury even in the absence of a request or objection by the defendant. *Taylor*, 332 S.W.3d at 488–89. The *Taylor* court concluded "that a jury charge is erroneous if it presents the jury with a much broader chronological perimeter than

20

is permitted by law." *Id.* at 488. The court thus held that the absence of a section 8.07(b) instruction, when combined with evidence of the defendant's conduct while a juvenile and the instruction that a conviction could be based on any conduct within the limitations period, "resulted in inaccurate charges that omitted an important portion of the law applicable to the case." *Id.* at 489.

Here, the State indicted appellant for his failure to timely report on or about September 1, 2011, during a particular 90-day verification period, during a particular date range starting August 17 and ending August 31, 2011. The application paragraph of the charge tracks these particular dates, and also tracks the statutory time-linked requirements set out in article 62.058(a) for sex offenders subject to 90-day verification. *See* Tex. Code Crim. Proc. art. 62.058(a). However, at trial, the evidence was not limited to appellant's conduct on or about September 1, 2011, or the particular August 2011 date range, but also included details of appellant's behavior after such dates when he was still subject to verification requirements. Further, the trial court, over objection, sua sponte provided the jury with an unqualified "on or about" instruction indicating that the dates alleged in the indictment were not binding and the State could prove that the offense had been committed at any time prior to the return of the indictment (April 17, 2012).[13] Such time period included two additional 90-day periods falling after September 1, 2011, during which appellant continued to be subject to verification requirements and thus potential additional offenses for lack of compliance.[14] Given that appellant was prosecuted for a time-linked sexual offender registration offense falling with a particular 90-day period and a particular time span within

---

[13] We note that the State concedes that it provided no evidence of the date of appellant's indictment. However, appellant has not raised this complaint on appeal.

[14] The record indicates that up until the 90-day time period ending in August 2011 appellant's behavior complied with the statute.

21

such 90-day period, the jury heard evidence of appellant's conduct beyond that period, and the trial court instructed the jury that it could convict appellant based on any conduct falling within the three-year time period prior to indictment, we conclude the charge "presented[ed] the jury with a much broader chronological perimeter than is permitted by law," resulting in an inaccurate and erroneous charge. *See Taylor*, 332 S.W.3d at 488–89.

### 3. Appellant suffered no actual harm due to the error.

Although appellant did not expressly lodge an article 36.14 objection, because he alerted the trial court to the problem that inclusion of the "on or about" instruction in "this type of offense" would improperly permit the jury to convict him for "any of the dates in between" September 1, 2011, and the indictment date, we proceed to determine whether the charge error was harmless. *See Almanza*, 686 S.W.2d at 171. The briefing on the issue of harm was limited. Appellant contends that the instruction was harmful because it authorized the jury to convict him for conduct occurring after September 1, 2011. The State argues only lack of egregious harm.

Nevertheless, we assess whether appellant has suffered actual harm "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole." *Vasquez v. State*, 389 S.W.3d 361, 368–69 (Tex. Crim. App. 2012) (citing *Almanza*, 686 S.W.2d at 171); *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (same). "Appellant must have suffered actual harm, not merely theoretical harm." *Sanchez*, 376 S.W.3d at 775.

A review of the entire jury charge reveals proper abstract instructions regarding the offense of failure to comply with registration requirements under

22

article 62.102; registration requirements under article 62.051; verification requirements under article 62.058(a) for offenders with two reportable convictions subject to 90-day reporting periods, with the 15-day compliance window requiring verification on or after the 83rd day and before the 98th day; definitions of "local law enforcement authority," "department," "reportable conviction," and "sexually violent offense" under chapter 62; definitions of "intentionally" and "knowingly" under section 6.03; and an application paragraph framing the offense at issue as occurring on or about September 1, 2011, specifically during a particular 90-day period, and particularly during the period of August 17 to August 31, 2011, and specifically as being the intentional or knowing failure to timely report to HCSO, the local law enforcement designated as appellant's primary registration authority.

The state of the evidence reveals that both the State and appellant presented evidence relating to appellant's conduct after September 1, 2011, through Burroughs', Barnot's, and Smith's testimony, as well as certain documents after such date. Although appellant objected to the relevance of such evidence, the State successfully argued that it needed to prove appellant intentionally and knowingly failed to appear on September 1 and such evidence would "show his intent and knowledge based on his behavior following his failure to appear on the September 1st appointment."[15] Barnot expressly described the "date of the violation" as September 1. Barnot discussed how his decision to bring charges was based on appellant's failure to appear for his September 1 appointment with HCSO's sex offender registration unit, and the failure to come in during the period of August 17

_____

[15] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401; *see, e.g., Harris*, 364 S.W.3d at 332, 336 (concluding evidence of intent or knowledge was legally sufficient in case where offender who missed scheduled appointment in circumstances where HPD's unit changed location testified regarding calls placed afterward to law enforcement in attempt to find out unit's new address).

23

to August 31 "for his 90-day verification." Both Lopez and Barnot testified regarding how HCSO's unit handles scheduling appointments, appellant's status as a "no show" for his September 1 appointment, and the lack of anything in appellant's case notes explaining his need to reschedule or failure to appear.

During closing arguments, appellant's counsel attempted to focus the jury on the August 17 to August 31, 2011, time period—specifically arguing that the evidence of the August 30 and August 31 phone calls showed a lack of intent or knowledge. The State also focused the jury on the September 1, 2011 date and the 15-day August 2011 time frame at issue.[16] Both sides referenced the complained-of instruction during argument. After noting the lack of evidence of the indictment date, appellant's counsel encouraged the jury "to hold the State to their burden of proof in regards to saying this is how you violated this statute." Directly after that, counsel indicated "somebody from the [State] thought that this [referring to May to August 2011 calendar exhibit] was the period that you should be looking at," but argued appellant was in compliance during that period. The State noted how the law as instructed indicated it was not bound by the September 1 date and that appellant continued to be out of compliance with the statute after that date, but emphasized "what matters here is the Defendant's behavior on September the 1st." Further, both sides discussed appellant's post-September 1 behavior specifically to

<hr />

[16] The State argued:

> You're here today to determine whether or not [appellant] intentionally and knowingly failed to verify his registration before or even on September the 1st of 2011. It really is that simple. . . . He either did it or he didn't. He either verified his registration with the sheriff's office by September the 1st, or he didn't. The rest of it doesn't count because it doesn't meet the requirements of the law.

The State argued appellant had a 15-day window to verify and failed to meet it, and that appellant "violated the law when he didn't show up on September the 1st." When discussing how it had met its elements, the State argued: "[Appellant] failed to report to the sheriff's office to verify that registration form that's on file. And he failed to do that in that 90-day window, between August 17 and August 31st of 201[1]."

24

advance their respective positions on appellant's intent or knowledge.[17]

Finally, with regard to other relevant information, the jury specifically requested a read-back of Smith's testimony regarding the date appellant entered drug rehabilitation, whether it was August 30 or August 31, 2011. We discern nothing in the record demonstrating that the jury mistakenly considered appellant's post-September 1 behavior in connection with any potential 90-day period violation other than the one ending in August 2011 when he failed to report to HCSO's sex offender registration unit. *See Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013) ("[T]he trial record must demonstrate that there is some actual harm and not just a theoretical complaint."). To the contrary, both sides framed the September 1st date as the point of violation, or not in appellant's case. After applying the *Almanza* analysis, we conclude that erroneous inclusion of the "on or about" instruction was harmless. *See Vasquez*, 389 S.W.3d at 372; *Sanchez*, 376 S.W.3d at 776.

## F. Appellant has shown no due process violation.

In his sixth issue, appellant argues that a fatal variance between his indictment and the evidence adduced at trial violated his due process rights. In particular, appellant contends the evidence of post-September 1 conduct "(along with the limitation instruction) permitted the jury to convict" him based on a variance between pleading and proof.[18] We disagree.

---

[17] For example, appellant argued: "Is he intentionally and knowingly failing to comply with the statute at this point in time when he's there trying to register on September 22nd, 2010? I submit to you the proof is otherwise. The State's own proof is otherwise. . . . why was Mr. Kelley coming back on the 29th? Why was he back out there? Well, maybe he was trying to comply with the sex offender registration statute that he was required to do." The State argued: "Everything he does after September the 1st is trying to avoid being held responsible for the fact that he violated the law when he didn't show up on September the 1st."

[18] As described, appellant objected to admission of the post-September 1 conduct and objected to inclusion of the "on or about" instruction. In his motion for new trial, appellant does

As a general rule, a variance between the indictment and the evidence presented at trial is fatal to a conviction. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995) (citations omitted). The reasoning behind the doctrine of variance is that a defendant should have notice of the charged offense to be able to "prepare, in advance of trial, an informed and effective defense." *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). Moreover, due process guarantees the defendant notice of the charges against him. *Stevens*, 891 S.W.2d at 650. However, only a material variance, or one that misleads or surprises the defendant to the prejudice of his substantial rights, is fatal. *Id.* at 650–51; *see Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) ("When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime").

We conclude that there was no fatal variance here. The indictment clearly indicated that the State was proceeding on the registration offense occurring on or about September 1, 2011, for a particular 90-day verification period, where the reporting window at issue was August 17 to August 31, 2011. This—appellant's failure to comply for that particular 90-day period ending in August 2011—is the offense that the State proved. Appellant has not advanced any particular argument, and the record does not disclose, as to how he was unable to adequately prepare his defense or was otherwise surprised by any variance. *See Gollihar*, 46 S.W.3d at 257. His defense for the particular 90-day verification period noticed in his

not specifically advance a fatal variance argument, and complains of a "due process" violation but in connection with "exculpatory evidence." We assume without deciding solely for purposes of our analysis that appellant preserved this issue.

indictment was lack of intent or knowledge, and he argued that his post-September 1 behavior consistently reflected his continued lack of intent or knowledge as to the September 1 violation. Nor has appellant advanced any potential double jeopardy concerns from his indictment. *See id.* at 258.

We overrule appellant's sixth issue.

### III. CONCLUSION

Accordingly, having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Marc W. Brown
Justice

Panel consists of Justices Boyce, Christopher, and Brown. (Christopher, J., dissenting).

Publish — TEX. R. APP. P. 47.2(b).