**Affirmed and Memorandum Opinion filed February 21, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00419-CR

## JASON LARA, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 15-DCR-068729**

## M E M O R A N D U M    O P I N I O N

Appellant Jason Lara appeals his murder conviction, arguing that (1) there is insufficient evidence to support his conviction and (2) the trial court abused its discretion by allowing the State to introduce a witness's prior consistent statement. We affirm.

### BACKGROUND

Appellant was charged with the murder of complainant Cristhian Cardozo. A

four-day jury trial was held on May 2, 2017, at which numerous witnesses testified regarding the circumstances of complainant's murder. The jury found appellant guilty.

Complainant's wife, Miriam Gigena-Cardozo, testified that she, complainant, their 14-year old son ["C.C."] and nine-year old daughter ["L.C."] arrived at a Walmart at 6:18 p.m. on December 10, 2014. Complainant did not go into the store with his family but stayed behind in their truck because he was tired. Shortly before 7:00 p.m., Gigena-Cardozo was still shopping with her children in the men's section when a young man in red shorts "came near [them] and then he starting [sic] looking at [them] and he started insulting [them] without any reason." She stated that another young man was behind the man in the red shorts, but he did not say anything.

Later, when the Cardozos exited the store, appellant approached them along with two of his friends (Antonio De La Cruz and Jerrod Dickerson). De La Cruz testified (and video footage confirmed) that (1) he wore red shorts and a camouflage jacket, (2) Dickerson wore a blue hoodie and black shorts, and (3) appellant wore long black pants and a black shirt with a white emblem. The Cardozos, appellant, De La Cruz, and Dickerson then engaged in a physical altercation; it ended with four to five gunshots and a mortally wounded complainant.

De La Cruz testified that (1) appellant later stated: "I got him. I shot him and I saw him . . . when he screamed," and (2) neither he nor Dickerson shot anyone. He was interviewed by the police before he hired an attorney and the videotaped interview was played for the jury; the video confirmed that De La Cruz told police that appellant had admitted to shooting complainant. Dickerson also testified that (1) appellant admitted shooting complainant, and (2) neither he nor De La Cruz shot complainant.

Adrian Nunezdevillavicencio also witnessed the altercation and testified at

2

trial. He testified that (1) the African-American man wore a blue hoodie, (2) one of the Hispanic men wore a black hoodie, and (3) he saw the man in the black hoodie "[p]ut a hoodie over his head" and then fire four to five shots with his revolver. He identified appellant as the shooter wearing the black hoodie on a still photo.

Tabitha Franklin testified that (1) she observed an altercation next to her vehicle, (2) she saw a father and son fighting with a Hispanic man wearing red shorts and an African-American man wearing a blue shirt, (3) when the man in the red shorts knocked the father on the ground, a man in a black hoodie approached and shot the father, (4) the gunman had a black hoodie over his head, and (5) she "saw the fire from the gun coming out" as the gunman shot the father while "standing over him." Franklin was certain that neither the man in the red shorts nor the man in the blue shirt shot the father; instead, she stated that the shooter was the man with a black hoodie over his head.

Walmart employee, Gwendolyn Williams, also witnessed the altercation and the shooting. She testified that she picked appellant as the shooter in a photo array when she went to the police station a few days after the shooting. Williams testified that her memory was "still pretty fresh" at the time she picked appellant in the photo array.

During the investigation, Detective Preston Ousley interviewed De La Cruz and Dickerson; both denied shooting complainant and stated appellant told them he shot complainant. Detective Ousley also spoke to Williams; he showed her a photo array and she identified appellant as the shooter. Detective Ousley also showed witnesses Nunezdevillavicencio, Williams, and Franklin video footage of appellant, De La Cruz, and Dickerson. The witnesses all were "consistent with the clothing description of what the shooter was wearing" and identified appellant as the shooter wearing dark pants and a black hoodie.

The State also presented testimony from Detective Linda Garcia of the Stafford Police Department, who assisted Detective Ousley in the investigation of complainant's shooting. Detective Garcia testified that the only person wearing a black hoodie was appellant and that multiple witnesses identified the shooter as wearing a black hoodie.

After hearing the evidence presented, the jury found appellant guilty of murder and sentenced him to life imprisonment. Appellant filed a timely appeal.

ANALYSIS

I.      Sufficiency of the Evidence

Appellant contends in his second issue that there is insufficient evidence to support his conviction for murder because the evidence is insufficient to establish that appellant shot complainant and had the requisite culpable mental state.[1]

A.      Standard of Review

The legal sufficiency standard of review is the only standard applied to determine whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("[T]his Court now applies only one standard 'to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency.'"). For this review, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to

---

[1] We address appellant's sufficiency issue first because, if it is meritorious, we would render a judgment of acquittal rather than reverse and remand. *Owens v. State*, 135 S.W.3d 302, 305 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (legal sufficiency challenge must be addressed first because, if evidence is insufficient, reviewing court must render judgment of acquittal).

4

determine whether the jury was rationally justified in its decision. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). Direct evidence and circumstantial evidence are equally probative; circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

The jury is the sole judge of credibility and the weight to be attached to witnesses' testimony. *Temple*, 390 S.W.3d at 360. The jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Kelley v. State*, 429 S.W.3d 865, 872 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We may not substitute our judgment for that of the jury and must defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

### B. The evidence is sufficient to establish appellant shot complainant

As applicable in this case, a person commits murder if he intentionally or knowingly causes the death of an individual. *See* Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2018). The charge also instructed jurors on the law regarding accomplice witness testimony and that they could not convict appellant unless (1) they believed De La Cruz and Dickerson were not accomplices; or (2) they believed De La Cruz's and Dickerson's testimony and other evidence tended to connect appellant to the charged offense.

As a matter of Texas law, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *See* Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2018); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)

5

(accomplice witness testimony "must be corroborated by independent evidence tending to connect the accused with the crime"). When evaluating the sufficiency of corroboration evidence under the accomplice witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the defendant with the commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Corroborative evidence need not establish a defendant's guilt or directly link him to the charged offense; it is sufficient if it tends to connect him to the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Nolley v. State*, 5 S.W.3d 850, 853 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Appellant contends the "evidence is insufficient to show appellant was the actual shooter" because the "conflicts in witness testimony were vast" and De La Cruz had a "clear motive" to shift the blame to appellant. Contrary to appellant's assertion, the record contains sufficient evidence to establish that appellant shot complainant even when eliminating De La Cruz's and Dickerson's testimony.

Several independent witnesses testified that they saw appellant shoot complainant in front of the Walmart store in Stafford at approximately 7:00 p.m. on December 10, 2014. Evidence in the form of witness testimony and video footage established that (1) appellant was the only man who wore a black hoodie and black pants at the scene, (2) Dickerson wore a blue hoodie and black shorts, and (3) De La Cruz wore a camouflage jacket with red shorts.

Nunezdevillavicencio testified that the shooter wore a black hoodie. Nunezdevillavicencio saw the man in the black hoodie "[p]ut a hoodie over his head" and fire four to five shots with his revolver at complainant. He testified he saw appellant with a revolver in his hand and identified appellant at trial as the shooter who wore a black hoodie.

Franklin also testified that she observed De La Cruz and Dickerson fight with C.C. and complainant up close while she sat in her car in front of the Walmart store. She testified that a man in a black hoodie approached and shot complainant when complainant was knocked to the ground by De La Cruz. She testified that the gunman had a black hoodie over his head and she "saw the fire from the gun coming out" as he shot complainant while "standing over him." Franklin was sure that neither De La Cruz nor Dickerson shot complainant; instead, she testified that the "shooter had on a black hoodie, which was over his head." Williams also testified that she observed the gunman firing shots at complainant, who was laying on the ground. Williams stated that she picked appellant as complainant's shooter in a photo array when she went to the police station. She stated that her memory was "still pretty fresh" when she identified appellant as the shooter.

Additionally, Detective Ousley testified that he spoke with Franklin, Williams, and Nunezdevillavicencio during the investigation and all three witnesses were "consistent with the clothing description of what the shooter was wearing" and identified appellant as the shooter wearing dark pants and a black hoodie. Detective Garcia also testified that during the investigation Nunezdevillavicencio, Franklin, and Williams identified appellant as the shooter on video surveillance footage.

Considering all the evidence and any reasonable inferences therefrom (while excluding the testimony of De La Cruz and Dickerson), we conclude that the jury as the sole judge of credibility and weight to be attached to testimony reasonably could have determined that appellant shot complainant. *See Johnson*, 509 S.W.3d at 322; *see also Ramsey*, 473 S.W.3d at 809, and *Temple*, 390 S.W.3d at 360.

**C.    The evidence is sufficient to establish appellant's mental state**

We next address appellant's contention that there is insufficient evidence he "possessed the requisite culpable mental state to support a conviction for murder."

Appellant argues the evidence failed to prove he intentionally or knowingly caused complainant's death because he made no express verbal threats against complainant and the medical examiner testified that the gun was not fired "at point-blank range".

As applicable in this case, "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (Vernon 2018). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b) (Vernon 2018).

Intent and knowledge are fact questions for the jury, which are almost always proven through evidence of the circumstances surrounding the crime. *Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Intent to kill may be inferred from acts, words, and conduct of the defendant. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (en banc). Evidence of culpability includes a defendant's flight from the scene of the crime. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).

Also, intent to kill may be inferred from the use of a deadly weapon. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Williams v. State*, 502 S.W.3d 262, 270 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). A revolver is a firearm and a deadly weapon per se. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon 2018); *see also Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (en banc) (holding that a revolver is a firearm, and a firearm is a deadly weapon per se), and *Williams*, 502 S.W.3d at 270.

Therefore, the jury in this case was entitled to infer intent to kill from appellant's use of a deadly weapon, his revolver, "'unless in the manner of its use it is reasonably apparent that death . . . could not result.'" *See Vuong v. State*, 830

S.W.2d 929, 934 (Tex. Crim. App. 1992) (en banc) (quoting *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986)); *see also Williams*, 502 S.W.3d at 270, and *Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Further, "'[i]f a deadly weapon is used in a deadly manner, the inference is almost conclusive that the [defendant intended] to kill.'" *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (alterations in original) (quoting *Godsey*, 719 S.W.2d at 580-81).

Here, the testimony of the eyewitnesses, that appellant pointed a loaded gun at complainant and then shot him, sufficiently supports a conclusion that appellant intentionally or knowingly caused complainant's death. Nunezdevillavicencio testified that appellant fired four to five shots at complainant and then fled the scene in a car. Franklin testified that appellant shot complainant after he was knocked to the ground and then ran away. Williams stated that appellant fired shots at complainant as he was laying on the ground and then fled the scene. Finally, medical examiner Dr. Dana Hopson testified that complainant suffered gunshot wounds to the head and torso. Dr. Hopson opined that the shots were fired from a distance of approximately two to three feet. Although appellant may not have shot complainant "at point-blank range" as he claims, he nonetheless shot complainant numerous times from a close distance.

The witnesses' testimony supports a conclusion that appellant used a deadly weapon in a deadly manner intended to cause complainant's death. *See Vuong*, 830 S.W.2d at 934; *Adanandus*, 866 S.W.2d at 215. The jury could find beyond a reasonable doubt from this testimony that appellant had a conscious objective or desire to cause death or was aware that his conduct was reasonably certain to cause death. *See Adanandus*, 866 S.W.2d at 215; *see also Childs*, 21 S.W.3d at 635. An additional indicator of appellant's guilt is his flight from the crime scene. *See*

*Clayton*, 235 S.W.3d at 780. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support appellant's murder conviction. Accordingly, we overrule appellant's second issue.

## II. Admission of Evidence

Appellant argues in his first issue that the trial court abused its discretion by allowing the State to play a portion of De La Cruz's videotaped police interview in which he stated that appellant shot complainant. Appellant argues that De La Cruz already testified at trial that appellant shot complainant and the prior consistent statement De La Cruz made during his police interview was inadmissible because "there was no express or implied charge against De La Cruz of recent fabrication."

Appellant points to the following exchange as proof that the trial court allowed the State to play a portion of De La Cruz's videotaped police interview for the jury over appellant's trial counsel's objection:

> [THE STATE]: We're going to offer State's Exhibit 70. For purposes of the record, we have a little short redacted version that we're going to introduce for purposes of the jury, just the part about him saying he already made the statement about him having the gun and shooting, all that prior to any deal with anybody or anything of that nature, as a prior consistent statement. Although they made the copy, it's kind of — it's a little rough on the copy. We could play the portion from here and just introduce the other one. It's up to you.
>
> THE COURT: Well, it's not just up to me.
>
> [THE STATE]: And up to [defense counsel].
>
> THE COURT: So your thoughts?
>
> [DEFENSE COUNSEL]: I would object to the whole deal.
>
> THE COURT: So you want the redacted portion?
>
> [DEFENSE COUNSEL]: Just the portion that relates to the questions.
>
> THE COURT: Okay. Then we're doing that.
>
> [DEFENSE COUNSEL]: Okay.

10

THE COURT: And I will also make the finding that this is offered as a prior consistent statement and that the case law element of that falls — and I see is the motive portion of it — is the use immunity agreement the date of that as opposed to this statement and it occurs before that.

[THE STATE]: Yes, it occurs way before that.

However, appellant does not present the complete exchange that occurred at trial. Specifically, Appellant omits the following:

THE COURT: All right. And what is this marked as?

[THE STATE]: It's going to be marked as 70 and 70-A. 70's for the record and 70-A is to go back to the jury.

THE COURT: I'm not sure that's what [defense counsel] is saying. I think what he's saying is that the only part that he doesn't object to is the redacted version.

[THE STATE]: Yes, this part's not going to the jury. I'm just going to put it into the record so that they know that the total —

THE COURT: Okay. So that one I want you to mark as a Court exhibit. That way it stays in its own space.

[THE STATE]: And do you want us to play it off of this one so that you can hear it better? Do you know what I'm saying?

THE COURT: I understand. Do you have any objection to playing just that selection of it off of the higher quality audio?

[DEFENSE COUNSEL]: No, no objection.

THE COURT: Just be sure that you only get the part that is in the actual exhibit. And it's 70 and Court's 70 are the two, right?

[THE STATE]: Court's 70 is for the record and we're offering 70-A as that goes to the jury.

THE COURT: Okay. 70-A is admitted without objection. Court's 70 is for purpose for the record only and is not to be taken back to the jury.

Appellant also omits the following exchange, which occurred immediately before the State played the redacted version of De La Cruz's police interview (State's Exhibit 70-A) for the jury:

[THE STATE]: Judge, if I can have a chance to just check and see if

11

they're ready?

THE COURT:  Okay.  Is that marked?

[THE STATE]:  It is, Judge, 70-A.  And we'd offer State's Exhibit 70-A.

*(State's Exhibit No. 70-A offered.)*

THE COURT:  Any objection?

[DEFENSE COUNSEL]:  No, Your Honor.

THE COURT:  All right. 70-A is in . . . .

*(State's Exhibit No. 70-A admitted.)*

*(State's Exhibit 70-A published.)*

An appellant must preserve error based on the erroneous admission of evidence in the trial court by making a specific and timely objection and obtaining a ruling from the trial court.  *Miles v. State*, 468 S.W.3d 719, 727 (Tex. App.—Houston [14th Dist.] 2015), *aff'd on other grounds*, 506 S.W.3d 485 (Tex. Crim. App. 2016); *see also* Tex. R. App. P. 33.1(a), and *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).  An appellant must object each time evidence is offered unless the appellant receives a running objection or requests a hearing outside the presence of the jury. *Merrit*, 529 S.W.3d at 556; *Miles*, 468 S.W.3d at 726.

Here, appellant objected only to the State playing De La Cruz's entire police interview for the jury; said interview was never played in its entirety.  However, appellant did not object to a redacted version of De La Cruz's police interview being played for the jury — State's Exhibit 70-A.  In fact, when the State offered the redacted police interview, appellant's trial counsel stated he had no objection to its admission.  Because trial counsel did not object to the admission of State's Exhibit 70-A, appellant failed to preserve any complaint on appeal that the trial court abused its discretion by allowing the State to play De La Cruz's redacted police interview for the jury.  *See* Tex. R. App. P. 33.1(a); *Holmes v. State*, 248 S.W.3d 194, 201

(Tex. Crim. App. 2008) ("a defendant waives any complaint on appeal concerning the admissibility of evidence when he affirmatively states, 'No objection,' at the time the evidence is offered").  Accordingly, we overrule appellant's first issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/     Meagan Hassan
Justice


Do Not Publish — Tex. R. App. P. 47.2(b).
Panel consist of Justices Christopher, Zimmerer, and Hassan.

13