CASE 44.—ACTION BY MARY I. WINBURN AGAINST GEORGE W. WINBURN FOR MAINTENANCE.—January 25, 1910.

## Winburn v. Winburn

Appeal from Henry Circuit Court.

CHARLES MARSHALL, Circuit Judge.

Judgment for plaintiff, both parties appeal.—Affirmed.

1. Husband and Wife—Separate Maintenance—Right.—A separate maintenance may be awarded a wife upon facts which would not authorize a divorce under the statute; as, where the wife was justified in leaving her husband's home because of his conduct.

2. Husband and Wife—Separate Maintenance—Action—Sufficiency of Evidence.—Evidence held to sustain a finding that plaintiff was entitled to separate maintenance by defendant, her husband.

TURNER & TURNER for appellant.

WILSON D. CRABB and H. K. BOWEN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On April 7, 1908, appellant, George W. Winburn, married the appellee, Mary I. Prewitt, a widow with several children. He was 56 and she was 50 years of age. They lived together as husband and wife un-

til the 21st day of May following, in all about six weeks, when she left him for the alleged cause of his cruelty and inhuman treatment of her, and shortly thereafter brought suit against him for maintenance. The material allegations of her petition were traversed. Much proof was taken in support of her complaint and his defense. The case was finally submitted to the chancellor for judgment, and he granted the prayer of the petition, and allowed the plaintiff $12 per month for her maintenance, and allowed her $125 as fees for her attorneys. The defendant is complaining of so much of the judgment as allowed any sum whatever for maintenance, because for him it is insisted it is unauthorized, and, even if authorized is excessive. Plaintiff is complaining of, and has prayed a cross-appeal from, so much of the judgment as only allowed her $125 for her attorneys, when she should have had at least $250 on this account.

The right of a wife to maintain such an action has been several times passed upon by this court. In Hulett v. Hulett, 80 Ky. 364, it was held that, where a husband treats his wife with such cruelty as to compel her to leave him, she may maintain an independent cause for alimony without seeking a divorce, and a separate maintenance may be awarded the wife by the chancellor on a state of facts which would not authorize the granting of a divorce. Zumbiel v. Zumbiel, 113 Ky. 841, 69 S. W. 708, 24 Ky. Law Rep. 590. Nor is the chancellor, in granting to the wife a separate support, restricted to the consideration of statutory grounds for divorce alone, but he may take into account any evidence offered to show that the wife was justified in leaving the home of her husband; and if, in his judgment, the evidence warrants it, he may grant her the relief sought, although the

acts proven are not by statute made grounds for di-
vorce. And it has further been held that, where the
acts of the husband are such as to justify the wife
in leaving him, she may sue for separate maintenance
without waiting for the year to run. In view of these
authorities and former rulings of this court, the pe-
tition unquestionably stated a cause of action, and
the demurrer thereto was properly overruled. The
judgment of the chancellor, granting to the appellant
a separate maintenance, should be upheld if the evi-
dence supports the pleadings.

It is shown that the defendant was a man well ad-
vanced in years, who had by thrift, economy, and fru-
gality accumulated an estate variously estimated as
worth from $9,000 to $12,000. He had, prior to their
marriage, lived alone in a frame dwelling upon his
farm, surrounded by little or none of the comforts
of life. ''Make, accumulate, and save'' had evidently
been his slogans. He was uneducated, and seemed
neither to have any interest in or care for the little
conveniences which go to make up the comforts of
the modern country-life home. His wife, while like-
wise uneducated, had enjoyed such comforts in her
home life as the average farmer's wife living in the
country surrounds herself with. She had a family
of children, well-bred, well raised, and fairly well
educated. Two of her daughters, at least, were mar-
ried. None of her children, it seems, actively op-
posed her marriage to defendant, and yet none of
them were pleased with it. Under these circum-
stances these people were married. After their mar-
riage he went to her home and lived there with her
and her children for a week or 10 days. During this
time there is no complaint but what he deported him-

vol. 136—24

self in a way becoming a dutiful husband. At the expiration of this time they went to his home to live. As it was so poorly furnished and turned out to be poorly provisioned, she took with them from her home several wagon loads of furniture and provisions. Two of her children, little girls, 9 and 13 years old, went with them. They had not lived at his home long before their marital troubles commenced. The floors of his house were uncarpeted. She had not taken the carpeting from her house, and requested her husband to buy one. At first he consented, later repented, and refused to pay for it, or to permit her to bring it into the house, under the statement that he did not need the room or the carpet. Telephones were in common use in that community. She wanted a telephone in the house. He declined to permit this to be put in. He bought nothing in the way of provisions with which to furnish and run the table at his home, but seemed content to use what she brought there, and regarded that as sufficient. He declined to wait upon his wife, and, when she wanted a horse and buggy, refused to hitch it up for her. She was compelled to do this work herself. In all of this he showed himself to be a man so unappreciative of those things that go to make up a married woman's life that it could hardly be expected that he could retain, if he had ever secured, her love. But it is in evidence that this conduct on his part was borne by his newly acquired wife with patience and fortitude, and that it was not until his conduct toward her assumed a more objectionable form that she openly rebelled and refused further to live with him. As above stated, she took two of her children to his home, a little girl 9 and another 13 years of age. He was very unkind to them, especially to the smaller child,

and perhaps the first open rupture that occurred be-
tween him and his wife was due to what is termed a
wholly unwarranted and unjustifiable correction of
this child. As evidences of his displeasure at having
these children at his home, it is cited that at the table
he would refuse to pass articles of food to them, or
to pay any attention to them, or to heed civil requests
on their part that he wait upon them at the table. It
is also cited that when in these moods, which seemed
to have possessed him most of the time after they
moved to his home, he would refuse to answer his
wife when she spoke to him, and in many ways
showed his displeasure with her and his dissatisfac-
tion with his lot. On as many as three separate occa-
sions he is shown to have used towards her, in the
presence of her little girls, language too foul and vul-
gar to be quoted. It was this conduct on his part that
caused his wife to refuse to live with him longer. It
is true that this testimony is in the main made by her
children, and the salient portions thereof altogether
by her children, and it is urged by counsel for appel-
lant in brief that this testimony should be received
with great caution, and given but little consideration;
but, inasmuch as these witnesses stand uncontra-
dicted and unimpeached, we are unable to say that
their testimony is either colored or untrue. Great
as is the duty which appellee owed to her husband
by reason of their marital relation, she owed an even
greater duty to these children, and her husband had
no right to demand of her that she should separate
herself from them, because of their tender years, and
neither did he have a right to expect her to permit
them to be brought up in an atmosphere surcharged
with vulgarity and profanity. If his own sense of
consideration for his wife had not prevented him

from the use of such language in her presence, his sense of propriety and decency should certainly have made him refrain from using such language in the presence of these innocent little girls, children whose characters in life were being molded and developed, and upon whose lives the constant association with one addicted to the use of such language must leave an indelible imprint. One can not read the record without being impressed with the idea that the defendant had, very shortly after his marriage to plaintiff, become dissatisfied with his lot, and this feeling was intensified by his wife's wanting him to go to some slight expense to make their home comfortable. This made him sullen, morose, and insulting to his wife and her little daughters, and although it is in evidence that he expressed a desire to have his wife return to and live with him after they had separated, such an expression on his part is so at variance with his conduct toward and treatment of her during the last month that they lived together as to make one doubt his sincerity upon this point.

On consideration of the whole case, we are of opinion that the chancellor reached the proper conclusion in adjudging that the wife was entitled to a separate maintenance by her husband; and, considering appellant's estate and its fair rental value, after taking into account the estate owned by his wife in her own right, the allowance of $12 per month was little enough—in fact, it might have been larger—and we would not have been disposed to disturb his finding.

On the question of allowance to plaintiff's attorney raised on the cross-appeal, we are of opinion that, according to the scale of fees usually charged in circuit courts in country counties like Henry, $125 is a good fee—much larger than is usually charged in cases of

this character, and quite as large as any good law-yer would have charged had the work been done under contract. We are, therefore, of opinion that the $125 which the chancellor fixed as a fair and rea-sonable fee was sufficiently large to fairly compen-sate plaintiff's counsel for all services rendered in this case.

The judgment is, therefore, affirmed on both the original and cross-appeals.