# CASE NOS. PD-0922-15
# PD-0923-15

## *In The Court Of Criminal Appeals*
## *For The State of Texas*

### CODY CARR,

Petitioner,

### VS.

### THE STATE OF TEXAS,

Respondent.

**Nos. 14-14-00085-CR & 14-14-00087-CR**
**In the Fourteenth Court of Appeals**
**At Houston, Texas**

## CARR'S PETITION FOR
## DISCRETIONARY REVIEW

*Respectfully submitted by:*

**COLIN B. AMANN**
**KETTERMAN HEDLESTEN & AMANN**
*1004 PRAIRIE, SUITE 300*
*HOUSTON, TX 77002*
*713.652.2003 (Voice)*
*713.652.2002 (Facsimile)*
colin@khalawyers.com

RECEIVED IN
COURT OF CRIMINAL APPEALS

August 26, 2015

ABEL ACOSTA, CLERK

**CARR RESPECTFULLY REQUESTS ORAL ARGUMENT**

# I.    IDENTITY OF PARTIES AND COUNSEL

## A.  Parties

The Honorable Vanessa Velasquez
183rd Judicial District Court
1201 Franklin, 18th Floor
Houston, TX 77002
Presiding Trial Judge

Cody Carr, Defendant/Appellant
Incarcerated

The State of Texas, Plaintiff/Appellee
The Harris County District Attorney's Office
1201 Franklin
Houston, TX 77002

## B.  Counsel

Julie A. Ketterman
Colin B. Amann
1004 Prairie, Suite 300
Houston, TX 77002
Trial & Appellate Counsel for Cody Carr

Janna May Oswald
Justin Alan Keiter
Harris County District Attorney's Office
1201 Franklin
Houston, TX 77002
Trial Counsel for the State of Texas

Alan Curry
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002
Appellate Counsel for the State of Texas

## II.    TABLE OF CONTENTS

Identity of Parties and Counsel..............................................................................i

Table of Contents............................................................................................ii

Index of Authorities........................................................................................iv

Statement Regarding Oral Argument...........................................................vi

Statement of the Case......................................................................................1

Procedural History...........................................................................................2

Question Presented...........................................................................................2

> The jury charges in these two cases defined the "on or about" language in the indictment as anytime within the limitations period. The jury was also told that there was no limitations for the charged offenses. And the "on or about" date in the indictment was factually undisputed. Did the instructions permit the jury to reach a non-unanimous verdict?

Reasons for Granting Review.........................................................................2

> 1.    The Court of Appeals has decided an important question of State law that has not been, but should be settled, by this Court.
>
> 2.    The Court of Appeals has decided an important question of State law in a way that conflicts with decisions from this Court.
>
> 3.    The Court of Appeals' decision conflicts with one of its own decisions on a similar issue.

Argument..........................................................................................................3

    A.    *Time-linked* Offenses...........................................................................3

B.       The Jury Charges Permitted Non-Unanimous Verdicts..........................9

Prayer..........................................................................................................15

Certificate of Service....................................................................................17

Certificate of Compliance.............................................................................18

## III.    INDEX OF AUTHORITIES

**Cases:**

*De Los Santos v. State*, 219 S.W.3d 71 (Tex. App. – San Antonio 2006)................8

*Francis v. State*, 36 S.W.3d 121 (Tex. Crim. App. 2000)...................................10, 11

*Gonzalez Soto v. State*, 267 S.W.2d 327 (Tex. App. – Corpus Christi 2008)...........10

*Joubert v. State*, 136 Tex. Crim. 219, 124 S.W. 368 (1938)....................................13

*Kelley v. State*, 429 S.W.3d 865
(Tex. App. – Houston [14th Dist.] 2014 pet. ref'd.......................................4, 5, 6, 7, 8

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App.2012)..........................................14

*McCarty v. State*, 178 S.W.3d 297
(Tex. App. – Houston [1st Dist.] 2006, pet. ref'd)......................................................11

*Mireles v. State*, 901 S.W.2d 458 (Tex. Crim. App. 1995).....................................12

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005)............................................10

*Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998).....................................12

*Sledge v. State*, 953 S.W.2d 253 (Tex. Crim. App. 1997)........................................13

*Taylor v. State*, 332 S.W.3d 483 (Tex. Crim. App.).....................................................7

*United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977)..............................................11

*Vernon v. State*, 841 S.W.2d 407 (Tex. Crim. App. 1992).......................................11

*Vick v. State*, 991 S.W.2d 830 (Tex. Crim. App. 1999)..............................................8

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007).......................................13

**Statutes:**

TEX. PENAL CODE ANN. §22.021(a)(B)(v)(Vernon's 2009)..........................................1

TEX. PENAL CODE ANN. §22.021(a)(B)(iv)(Vernon's 2009).......................................1

**Constitution:**

TEX. CONST. art. V, §13..............................................................................vi, 15

## IV. STATEMENT REGARDING ORAL ARGUMENT

The issue is whether the statute-of-limitations language in a jury charge allows for a non-unanimous verdict in an aggravated sexual assault case — where there is no limitations period, and the "on or about" date alleged in the indictment is not disputed. This appears to be a question of first impression. And its resolution implicates State Constitutional safeguards.[1]

When a precedent-setting case arises, it is paramount that as many relevant arguments as possible are explored and examined. This is of course, at least initially, counsels' job. But it is difficult to determine what theories that the Court wishes to entertain, and focus on, without the aid of oral argument. This is especially true in instances of first impression.

Counsel – and counsel alone – cannot generate the creative reasoning that this Court's collective body is capable of achieving. It is precisely this creativity that is best exhibited, if not actually produced, at oral argument. Reasoned argument arising from a give-and-take discussion is, after all, the best bedrock for all decision-making. The Court's decisional process will thus be significantly aided by granting oral argument.

---

[1]/ *See* TEX. CONST. art. V, §13.

## V. STATEMENT OF THE CASE[2]

The Appellant, Cody Carr, was charged in two indictments with aggravated sexual assault of a child less than fourteen-years old. The first indictment alleged that he intentionally and knowingly caused Jane's[3] mouth to contact his penis.[4] The second indictment alleged that Carr intentionally and knowingly caused his penis to contact Jane's anus.[5] These cases were consolidated and tried to a jury at the same time.[6]

Carr was convicted of both cases.[7] The trial court assessed punishment in each case at six years in prison, to run concurrently.[8] Carr timely appealed both convictions.

---

[2]/ These two appeals have been consolidated, as were the trial court cases. A separate Clerk's Record, however, was filed for each case. And since the page numbering is not consistently identical for each, reference to the Clerk's Record will be by volume, followed by the appellate cause number, which will be included in parentheses. The page number will then be indicated. For example, Volume 1, page five of the Clerk's Record in Cause No. 14-14-00085-CR will be cited as: C.R. I (14-14-00085-CR) at 5. The Reporter's Record is the same for both appeals. It will be cited by volume and page number (e.g., R.R. V at 6).

It should also be noted that Carr was originally indicted in cause numbers 1329616 and 1329617. He was re-indicted in cause numbers 1405759 and 1405761. All of the motions and papers filed under the old cause numbers were transferred to the new cause numbers, which is why some of the documents bear the old cause numbers.

[3]/ Jane is the pseudonym used by the Court of Appeals to identify (and protect the privacy of) the child-complainant.

[4]/ C.R. I (14-14-00085-CR) at 7; TEX. PENAL CODE ANN. §22.021(a)(B)(v)(Vernon's 2009).

[5]/ C.R. I (14-14-00087-CR) at 7; TEX. PENAL CODE ANN. §22.021(a)(B)(iv)(Vernon's 2009).

[6]/ C.R. I (14-14-00085-CR) at 85; C.R. I (14-14-00087-CR) at 87. R.R. II at 6, 8.

[7]/ C.R. I (14-14-00085-CR) at 120; C.R. I (14-14-00087-CR) at 120. R.R. VI at 4-5.

[8]/ C.R. I (14-14-00085-CR) at 123; C.R. I (14-14-00087-CR) at 121.

-1-

**VI. STATEMENT OF PROCEDURAL HISTORY**

The Court of Appeals filed its opinion, which is designated for publication, on June 23, 2015.[9] No motion for rehearing was filed.

**VII. QUESTION PRESENTED**

The jury charges in these two cases defined the "on or about" language in the indictment as anytime within the limitations period. The jury was also told that there was no limitations for the charged offenses.[10] And the "on or about" date in the indictment was factually undisputed. Did the instructions permit the jury to reach a non-unanimous verdict?

**VIII. REASONS FOR GRANTING REVIEW**

1.     The Court of Appeals has decided an important question of State law that has not been, but should be settled, by this Court.

2.     The Court of Appeals has decided an important question of State law in a way that conflicts with decisions from this Court.

3.     The Court of Appeals' decision conflicts with one of its own decisions on a similar issue.

---

[9]/  A copy of the opinion is attached to this petition.

[10]/  C.R. I (14-14-00085-CR) at 116; C.R. I (14-14-00087-CR) at 116.

## IX.  ARGUMENT

### A.  *Time-linked* Offenses

A few facts about Carr's cases must be highlighted before his argument can be fully understood.[11] The most important aspect is that the evidence makes this a *time-linked* case. In other words, the "on or about" language of the indictment was not at issue.

The offenses were allegedly committed during Jane's Christmas break. Her memory was specific, and oriented to special occurrences.

- She said that she stayed with Carr at Christmastime when she was in the second grade.[12]

- She remembers that it was over her two-week Christmas break, the first week of which she spent with Carr.[13]

- She had "a Christmas party for the last day before Christmas break."[14]

- She was involved with a Christmas program that required her to go to choir rehearsals.[15]

---

[11]/ A complete factual review can be found in Carr's Brief at pages 3-19.

[12]/ R.R. IV 39.

[13]/ R.R. IV 100.

[14]/ R.R. IV 40.

[15]/ R.R. IV 96-97.

- She recalls that her "Poppy" (Carr's dad, Shelby) stayed at the house during that week, and slept in the same bed with her *every* night that she was at Carr's house.[16]

- The first day of Jane's Christmas break – and the day that Poppy arrived at Carr's house – was December 20, 2010.[17]

It was during this time, over Christmas break, that Carr allegedly assaulted Jane. And not surprisingly, the State alleged that the offenses occurred on or about December 20, 2010.[18] It was within the confines of one week – starting on December 20 – that the two crimes allegedly occurred. The undisputed facts hence cabined the parameters of the crimes. It is in this factual sense that the offenses are *time-linked*.

The notion of *time-linked* offenses is gleaned from the Fourteenth Court of Appeals' decision in *Kelley v. State*.[19] In that case, the defendant was charged with failing to comply with the statutory sex-offender-registration requirements. Those provisions provide that "[a] person who has been convicted of two or more 'sexually violent offenses' is required to register at least once 'in each 90-day period following the date the person first registered under [chapter 62] . . . .'"[20] So the offense of failing

---

[16]/ R.R. IV 41-42. (Emphasis added).

[17]/ R.R. IV 13-14.

[18]/ C.R. I (14-14-00085-CR) at 7; C.R. I (14-14-00087-CR) at 7.

[19]/ *Kelley v. State*, 429 S.W.3d 865 (Tex. App. – Houston [14th Dist.] 2014, pet. ref'd).

[20]/ *Kelley*, 429 S.W.3d at 873.

to register is legally – as opposed to factually – *time-linked* by the statutory requirement applicable to sex offenders who are subject to the 90-day verification period.

The various reporting dates and time periods in *Kelley* are confusing and are not relevant to this discussion. Suffice it to say that the defendant was supposed to report "during the period from August 17 to August 31, 2011."[21] When he failed to report on September 1, 2011, the State indicted him "for his failure to timely report on or about September 1, 2011, during a particular 90-day verification period, during a particular date range starting August 17 and ending August 31, 2011."[22] And the jury was instructed accordingly.

The application paragraph of the jury charge included the dates alleged in the indictment, and also tracked the *time-linked* requirements for sex offenders who were subject to the 90-day verification. But it went a step further. The charge contained a limitations instruction. It told the jury that they were not bound by the "on or about" date in the indictment — the limitations period controlled. And the jury could find the defendant guilty if his failure to comply with the sex-offender-registration requirement occurred within "three years prior to [the date that the indictment was filed]."[23] This

---

[21]/ *Kelley*, 429 S.W.3d at 874.

[22]/ *Kelley*, 429 S.W.3d at 880.

[23]/ *Kelley*, 429 S.W.3d at 878.

instruction caused a very real mischief.

The problem with the charge was that the time frame detailed in the limitations instruction "included two additional 90-day periods falling after September 1, 2011, during which [the defendant] continued to be subject to verification requirements and thus potential additional offenses for lack of compliance [existed]."[24] In other words, the jury was authorized to find the defendant guilty for either the offense as it was alleged in the indictment, *or* the offense as it might have occurred during the three-year limitations period. The jury likewise could have become split: some number could have believed – beyond a reasonable doubt – that the defendant was guilty as charged, while others may have had a reasonable doubt about the indictment's allegations, but were persuaded that an offense occurred at some point during the three years before the indictment was presented. And even though the Court did not address the particular harm of permitting a non-unanimous verdict, it is apparent that the instruction created an environment where such an unconstitutional result could occur.

In essence, the jury instruction in *Kelley* disjunctively submitted two separate offenses, which were not merely alternative means of committing a single offense. The first offense was the one alleged in the indictment. The second was the possibility that any other violation occurred during the limitations period. It is important to realize that

---

[24]/ *Kelley*, 429 S.W.3d at 880.

these two offenses were indeed separate because the registration requirement was a *time-linked* offense "falling within a particular 90-day period and a particular time span within such 90-day period . . . ."[25]

The Court of Appeals concluded that the limitations instruction was erroneous because it permitted the jury to convict the defendant "based on any conduct falling within the three-year time period prior to the indictment . . . ."[26] The jury was therefore presented "with a much broader chronological perimeter than is permitted by law."[27] This *time-linked* feature can likewise be found in Carr's situation.

As outlined above, Carr's case was factually *time-linked* to the week of December 20, 2010. The undisputed evidence provided no proof that the alleged offenses occurred at any other time. Yet the instructions told the jury that there was no limitations period.[28] So they could convict Carr if the alleged offenses were committed at any time during Jane's life — which, much like the situation in *Kelley*, was a much broader chronological perimeter than was permitted by the evidence.

Aggravated sexual assault is a conduct-oriented offense: "each separately

---

[25]/ *Kelley*, 429 S.W.3d at 880.

[26]/ *Kelley*, 429 S.W.3d at 880.

[27]/ *Kelley*, 429 S.W.3d at 880, quoting *Taylor v. State*, 332 S.W.3d 483, 488-89 (Tex. Crim. App. 2011).

[28]/ C.R. I at 116.

described conduct constitutes a separate statutory offense."[29] If, for example, the same sexual assault is committed on two different dates, then two separate offenses have occurred. And it would be error to submit these two separate crimes to the jury, in the disjunctive, without requiring a unanimous verdict on each. That is the law.[30] Such a charge would – in the words of *Kelley* – create "a much broader chronological perimeter than is permitted by law."[31] But that is exactly what the jury charges permitted here.

The alleged offenses were *time-linked* to the week of December 20, 2010. But the jury was allowed to invent any other date during Jane's life when the alleged offenses were committed. They could convict Carr for the "on or about" December 20 offenses, *or* they could convict him for an offense that occurred on some other, unspecified date. There is little doubt, then, that the jury charges under scrutiny here were erroneous.

The *Kelley* decision is curiously absent from the Court of Appeals' opinion in this case. To the extent that *Kelley* is controlling, or even persuasive, the Court of Appeals has decided a case that conflicts with one its earlier rulings. And, in any event,

---

[29]/ *Vick v. State*, 991 S.W.2d 830, 833-34 (Tex. Crim. App. 1999).

[30]/ *See De Los Santos v. State*, 219 S.W.3d 71, 77-78 (Tex. App. — San Antonio 2006).

[31]/ *Kelley*, 429 S.W.3d at 880.

this Court should decide the important question of whether juries should be instructed on a limitless statute of limitations when an offense is factually *time-linked* because the "on or about" language of the indictment is not disputed.

**B.    The Jury Charges Permitted Non-Unanimous Verdicts**

Setting aside, for the moment, the concept of legally and factually *time-linked* offenses, a more traditional argument demonstrates that Carr's jury instructions permitted non-unanimous verdicts.

The charge for both of these cases instructed the jury that:

> . . . the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations. There is no limitation period applicable to the offense of aggravated sexual assault of a child.[32]

There was no separate unanimity instruction. The only mention of the word *unanimous* appears in the following language regarding selection of the foreperson:

> "After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberation, vote with you, and when you have unanimously agreed upon a verdict, to certify your verdict . . . ."[33]

Such language has been characterized as merely *boilerplate*, and has not been

---

[32]/  C.R. I (14-14-00085-CR) at 116; C.R. I (14-14-00087-CR) at 116.

[33]/  C.R. I (14-14-00085-CR) at 118; C.R. I (14-14-00087-CR) at 118.

sufficient to rescue a defective charge.[34]

The jury was therefore instructed that they could convict Carr if the alleged offenses were committed at anytime during Jane's life. Such a charge permits a non-unanimous verdict in violation of the Texas Constitution.

The Texas Constitution demands jury unanimity in all criminal cases.[35] As this Court observed, "[a]n unanimous jury verdict ensures that the jury agrees on the factual elements underlying the offense — *it is more than mere agreement on a violation of a statute.*"[36] The *factual elements* of course encompass the date of the alleged offense. For instance, if the jury charge submits – in the disjunctive – two separate offenses, and not merely alternative means of committing a single offense, then it creates the possibility of a non-unanimous verdict, which constitutes error.[37] In this regard, it should likewise be remembered that the unanimity requirement is a compliment to, and helps in effectuating, the beyond-a-reasonable-doubt standard of proof.[38] This standard, however, becomes blurred when an indictment's "on or about"

---

[34]/ *Gonzalez Soto v. State*, 267 S.W.3d 327, 338 (Tex. App. – Corpus Christi 2008).

[35]/ *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); TEX. CONST. art. V, §13.

[36]/ *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000)(emphasis added).

[37]/ *Francis*, 36 S.W.2d at 124-25; *McCarty v. State*, 178 S.W.3d 297, 302-03 (Tex. App. – Houston [1ˢᵗ Dist.] 2006, pet. ref'd).

[38]/ *United States v. Gipson*, 553 F.2d 453, 457 n. 7 (5ᵗʰ Cir. 1977).

language is not properly contained.

This Court has held that various acts of sexual abuse committed over time do not comprise a single offense. A person who commits "multiple discrete assaults against the same victim" can be separately prosecuted for each act of abuse.[39] A defendant can be charged with offense "A," allegedly perpetrated on date "B," for example, and also be indicted for the same offense "A" if it is allegedly committed on date "C." They are two separate criminal acts. So it is easy to see how a *limitless limitations* period can lead to a non-unanimous verdict.

It is possible for some jurors to believe that a defendant is not guilty of sexual assault "A" that allegedly occurred "on or about" specified date "B," while at the same time, others might think that the proscribed conduct "A" happened at some unspecified time "C" during the child's life. They could – in the Court of Appeals' words – "agree upon a single and discrete incident . . . .,"[40] but not agree on the date, notwithstanding that a different date means a separate crime. This is exactly the harm caused by the limitations charge in this case. When confronting such an instruction, it is difficult to fathom how limitless statutes of limitations were established "for the benefit of

---

[39]/ *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992).

[40]/ Court of Appeals Opinion at page 9, attached to this petition.

defendants and not the State."[41] It is, quite frankly, an absurdity on its face: how can something with limitations have no limits?

The statute of limitations protects persons from prosecution after the passage of an express period of time following an alleged offense. It can thus be characterized as "an act of grace for the benefit of potential defendants . . . ."[42] And it can be reasonably viewed as a defensive instruction. These statutes were actually enacted "for the benefit of defendants and not the State."[43] But if there is no limitations period, then it is even more difficult than Justice Meyers imagined to conceive how the "on or about" language in an indictment works "some magic allowing the State to prove an offense on a date other than the one alleged."[44] Yet it appears as if this is exactly what that phrase does, at least as far as this Court is concerned.[45] And perhaps such a rule does have its place where a limitations period is not limitless. No rule's application, however, should be extended beyond reason.

What logical purpose is served by telling a jury that "on or about" means

---

[41]/ *Proctor v. State*, 967 S.W.2d 840, 843 (Tex. Crim. App. 1998).

[42]/ *Proctor*, 967 S.W.2d at 843.

[43]/ *Proctor*, 967 S.W.2d at 843.

[44]/ *Mireles v. State*, 901 S.W.2d 458, 465 (Tex. Crim. App. 1995)(Meyers, J., dissenting).

[45]/ *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997)(referring to "on or about language" as allowing the State to prove a date other than the one alleged but within the limitations period).

anytime during the limitations period, only to then say that there is no limitations? The answer is: *none*. It is confusing, at best. At worst, it allows jurors to improperly decide that an offense occurred outside the perimeter of the evidence.

In an aggravated-sexual-assault-of-a-child case, which has no limitations period, "on or about" should be given its ordinary and common meaning — especially when the "on or about" date is undisputed. It can then be presumed that "jurors are supposed to know such common meaning and terms, . . . ."[46] Juries must in fact remain free to "consider and evaluate the evidence in whatever way they consider it relevant to the statutory offense."[47] And in doing so, they will be permitted to construe terms that are not statutorily defined according to the rules of grammar and common usage.[48]

In its opinion, the Court of Appeals concluded —

> There is no evidence of *other actions* that occurred at other times that could constitute these offenses and cause the jury to agree that either offense had occurred and disagree on the facts underlying the offense.[49]

This observation misses the point, which can be made by looking no further than the State's closing arguments, and a few simple facts.

---

[46]/ *Joubert v. State*, 136 Tex. Crim. 219, 222, 124 S.W. 368, 369 (1938).

[47]/ *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007).

[48]/ *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App.2012).

[49]/ Court of Appeals Opinion at page 10, attached to this petition. (Emphasis added).

In her closing argument, the prosecutor relied on the limitless limitations charge to better make her case: "Even if you were to believe Amberly [a defense witness] . . . . it doesn't matter. Because the second page of the jury charge says 'on or about.' *Jane * * * may have gotten the date wrong*."[50] This invitation was supported by evidence that: (1) Carr would visit Jane whenever he came home on leave while he was in the Navy;[51] and (2) Carr and Jane's mother entered into a custody and child-support agreement that allowed Carr visitation on every other weekend, a month during the summer, and alternate holidays, after his military service was completed.[52] Jane was four-years old when Carr completed his military service and returned home on a permanent basis.[53]

So when the Court of Appeals says that "There is no evidence of *other actions*," the response has to be that this observation is irrelevant. There does not have to be evidence of "other actions" since each assault constitutes a separate crime. Crime "A" committed on date "B" is different from crime "A" committed on date "C." And as the evidence recited above demonstrates, there was ample opportunity for the jury to

---

[50]/ R.R. V at 196. (Emphasis added).

[51]/ R.R. IV 111.

[52]/ R.R. IV 113-114.

[53]/ R.R. IV 112.

decide that same assault may have occurred at times different from either the "on or about date" alleged in the indictment, or the time period that Jane specifically remembered and testified to. The limitless limitations instruction thus empowered the jury to become divided — some believing the "on or about" date, while others may have settled on the more speculative periods when Carr and Jane were simply together. And the prosecutor provided the impetus for the jury to exercise that power.

The Court of Appeals' opinion conflicts with the cases from this Court requiring that a jury's verdict be unanimous. It its deepest sense, the opinion collides with Article V, Section 13 of the Texas Constitution.

Carr contends that he suffered some harm from the erroneous jury charge. But the harm issue was not addressed by the Court of Appeals since it determined that the jury charges were not erroneous.

## X.     PRAYER

Carr requests that his Petition for Discretionary be granted, and that this Court find the existence of error in the trial court's jury instructions.

Carr further asks that the Court of Appeals' decision be reversed, and that these cases be remanded to that Court so that it can determine whether Carr suffered some harm from the erroneous jury instructions.

Carr finally prays for any other relief that he is justly entitled to receive.

Respectfully submitted,

KETTERMAN HEDLESTEN & AMANN, PLLC

By: /s/ Colin B. Amann
    COLIN B. AMANN
    State Bar No. 01138100
    1004 Prairie, Suite 300
    Houston, Texas 77002
    (713) 652-2003
    (713) 652-2002 (Facsimile)
    colin@khalawyers.com

## CERTIFICATE OF SERVICE

A copy of Carr's Petition for Discretionary Review was delivered to the following party(ies) by the means indicated on August 24, 2015:

*E-Mail Delivery:*
curry_alan@dao.hctx.net

Appellate Division
Harris County District Attorney
Houston, Texas

*Certified Mail, and E-mail*:
*RRR* #7003 3110 0000 8697 4663
information@spa.texas.gov

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, TX 78711

         /s/ Colin B. Amann
         COLIN B. AMANN

## CERTIFICATE OF COMPLIANCE

Carr's brief is in conventional typeface that is no smaller than 14-point. The brief is a computer-generated document that contains 4,510 words.

/s/ Colin B. Amann
COLIN B. AMANN

Affirmed and Opinion filed June 23, 2015.



In The

# Fourteenth Court of Appeals

NO. 14-14-00085-CR
NO. 14-14-00087-CR

CODY CARR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1405759 & 1405761

# OPINION

Appellant Cody Carr challenges his convictions for aggravated sexual assault of a child, asserting insufficiency of the evidence and contending the "on or about" language in the jury charges allowed the jury to reach a non-unanimous verdict. We affirm.

## I. Factual and Procedural Background

The ten-year-old complainant, Jane,[1] is appellant's daughter. According to Jane, one night while she was staying with appellant and her stepmother over Christmas break, appellant came into her room, flipped her onto her belly, and placed his sexual organ in her anus. The next morning, Jane was watching cartoons on television when appellant approached her and asked her if she would like some peanut butter. Jane responded affirmatively. Appellant then placed goggles covered with tape over the child's eyes. According to Jane, appellant confirmed that she could not see. Then, Jane heard appellant leave. When he returned, he asked the child to lick the peanut butter off of what he told her was his finger. Jane concluded the peanut butter was on his sexual organ, not his finger. After three or four licks, the child refused more peanut butter. Appellant then went to take a shower.

Jane told her best friends that her father did something "bad" to her. Jane implored her friends to keep it a secret. Months later, Jane also told her mother about the incidents.

Charged in two indictments with aggravated sexual assault of a child, appellant pleaded "not guilty" to both. The two cases were consolidated for trial. At a trial by jury, the jury found appellant guilty as charged of both offenses. The trial court assessed punishment for each offense at six years' confinement, with the sentences to run concurrently.

## II. Issues and Analysis

### A. Sufficiency of the Evidence

In his first and second issues, appellant asserts that the evidence is

---

[1] To protect the privacy of the child-complainant, we identify her by the pseudonym, "Jane."

insufficient to show appellant intentionally or knowingly (1) caused Jane's anus to contact his sexual organ and (2) caused his sexual organ to contact Jane's anus. In particular, appellant asserts that the alleged assaults could not have taken place because witnesses testified that appellant was not alone with Jane during Christmas break, when she alleged the assaults occurred. Appellant also asserts that the evidence is insufficient to show he caused Jane's mouth to contact his sexual organ because the child could not positively identify appellant's sexual organ as the object her mouth touched.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

As is relevant to the instant cases, a person commits aggravated sexual

assault if the person intentionally or knowingly (1) causes the anus of a child younger than fourteen years of age to contact the person's sexual organ, or (2) causes the mouth of a child younger than fourteen years of age to contact the person's sexual organ. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B) (West, Westlaw through 2013 3d C.S.). One indictment alleged that appellant intentionally and knowingly caused his sexual organ to contact Jane's anus. The other indictment alleged that appellant intentionally and knowingly caused his sexual organ to contact Jane's mouth. A child-complainant's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West, Westlaw through 2013 3d C.S.).

## A. The First Incident

Jane was ten years old and in fifth grade at the time of trial. Jane testified that both incidents took place over Christmas break when she was in second grade. Describing the first incident, she testified that she was alone in a bed in the guestroom at appellant's house when appellant came into the room. According to Jane, there were times when appellant pulled up her shirt and kissed her belly. On this night, appellant pulled down her shorts or underwear and turned her over to where she was on her belly. Jane turned back to her side, but appellant turned her back over onto her belly and proceeded to put his "private part" into her "butt." Jane testified that appellant did this about two or three times, then appellant would stop, and then he repeated the action about three times. Jane testified that it hurt. After appellant finished, he got off the bed and Jane went into the bathroom. Jane testified that when she came out of the bathroom, appellant asked her if she was okay and she told him she was. But, Jane said that her "butt" hurt for a week.

A friend of Jane's, also in fifth grade, testified that Jane told her something bad about Jane's father and asked her to keep it a secret. The friend testified that

she kept Jane's secret for awhile but she eventually told her parents because she felt sad for Jane. Jane also eventually told her mother about appellant's actions because she could not "hold it in" anymore. According to Jane's mother, one night Jane informed the mother that she could not sleep. The tone of Jane's voice was very shaky and she looked very sad and scared. Jane's mother asked Jane why she could not sleep and Jane said she needed to disclose "something that her daddy had done that is really, really, really bad." Jane explained that she was unable to use her words to tell her mother, but, through tears, Jane was able to write her mother a note. The note was admitted into evidence and was consistent with Jane's testimony at trial.

After disclosing the assault, Jane saw Dr. Michelle Lyn and a social worker at the Children's Advocacy Center. Dr. Lyn noted that at the time of her evaluation, Jane was reliving events of abuse and was experiencing frequent nightmares.

Jane's testimony alone is sufficient to support the convictions for aggravated sexual assault. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Even so, appellant argues that Jane's testimony is unbelievable because he was not alone with Jane during the Christmas break, when Jane alleged he assaulted her. Jane's mother and appellant's wife both testified that appellant picked up Jane from her mother's home on December 17th and returned Jane to her mother on December 24th. Jane testified that she and her grandfather (appellant's father) shared a queen-sized bed in the guest bedroom in appellant's home during part of the break. According to Jane's grandfather, he was there from December 20th through December 24th. Appellant's wife testified that she and appellant dropped Jane off at her aunt's home to spend the night on December

5

17th, 18th, and 19th. But, Jane said there were nights that she was at appellant's home when her grandfather was not present. Jane's grandfather's testimony did not establish that Jane was not alone with appellant. Jane and appellant's wife were the only witnesses who testified regarding Jane's location during the first three days of her Christmas break and their testimony conflicted. Appellant's wife also testified that appellant never got out of bed at night during Christmas break. Jane's testimony also conflicted with appellant's in this respect. We presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d at 47. Accordingly, we presume that the jury accepted Jane's testimony that she was alone with appellant and that appellant assaulted her.

The evidence is sufficient to support the jury's verdict on the first offense. *See id.*; *Bargas*, 252 S.W.3d at 888. Appellant's first issue is overruled.

### B. The Second Incident

Jane testified that the morning after appellant assaulted her, appellant approached her and asked her if she wanted peanut butter while she was watching cartoons. Jane responded affirmatively. Appellant left the room, retrieved goggles that had tape over them, placed the goggles over Jane's eyes, and asked her if she could see. According to Jane, she told appellant she could not see. Appellant then held up some fingers and asked her what he was holding up. Jane said she responded "[t]wo, or something like that," and then appellant said, "Okay, you're fine." Jane then heard footsteps and assumed appellant put peanut butter on something before returning. Jane explained that when appellant returned he said, "[h]ere's some peanut butter," and she licked the peanut butter off of something. In her note, Jane said that appellant told her she was licking the peanut butter off of his fingers, but she testified that it did not feel like a finger or spoon or any other

6

type of utensil. After four licks, Jane related that appellant asked Jane if she wanted more peanut butter and she said, "[n]o thank you." According to Jane, appellant then walked into the kitchen and helped her remove the goggles before going upstairs to take a shower.

With her eyes covered, Jane could not see during the peanut butter incident, but she testified that she believed the peanut butter was on appellant's "private part." Jane testified that she and appellant were alone at this time and appellant's wife was at work. Appellant's wife testified that she had the entire Christmas break away from work and she was always awake before appellant. Appellant asserts that the evidence is legally insufficient to support his conviction under the second indictment because the evidence shows he was not alone with Jane and because, although Jane concluded that she licked peanut butter off of appellant's sexual organ, Jane did not see it and could not describe the way it felt.

Jane's testimony conflicted with appellant's wife's testimony regarding the wife's presence in the home at the time of the incident. We presume the jury resolved the conflict in the evidence in favor of the prevailing party. *Turro*, 867 S.W.2d at 47. We presume the jury believed Jane's testimony that the assault occurred and that the jury discounted appellant's wife's testimony that it did not. *See Fuentes*, 991 S.W.2d at 271.

Relying on her senses other than vision, Jane was able to say that the surface from which she licked the peanut butter did not feel like a finger, a spoon, or any other kind of utensil. Although Jane testified that she did not see appellant's sexual organ and, although she could not describe it (other than distinguishing it from the objects identified above), she concluded appellant had her lick peanut butter off his sexual organ and the evidence is sufficient for the jury to have determined Jane was correct in her assessment. *See Villalon*, 791 S.W.2d 130, 134

7

(Tex. Crim. App. 1990) (noting that child-complainants are not expected to testify with the same clarity and ability as is expected of adults); *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.) (holding that complainant's failure to make in-court identification of defendant went to the weight and credibility of the witnesses and concluding circumstantial evidence was sufficient to uphold defendant's conviction). First, we note that Jane was consistent in her conclusion. In her note to her mother, Jane wrote that appellant put peanut butter on his "thing" and asked her to lick it off. In this note, she used the term "thing" to describe appellant's sexual organ in the context of the first assault. Second, the timing of the second assault lends credibility to Jane's conclusion. The second assault occurred the morning after the first assault. The jury could have concluded that, even though Jane did not see appellant's sexual organ, she was able to conclude that it was his sexual organ based on having been assaulted the night before. Third, Jane wrote that appellant told her she was licking peanut butter off of his finger, but using sensory input, Jane concluded it did not feel like a finger. Based on this evidence, the jury could have concluded that appellant lied to Jane, a fact that supports Jane's conclusion that appellant had her lick peanut butter off his sexual organ. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (noting that lies are indicative of consciousness of guilt). Finally, appellant's actions in placing goggles over Jane's eyes so that she was unable to see what appellant was doing bolster's Jane's conclusion that appellant was asking her to lick his sexual organ. *See Word v. State*, 12 Tex. Ct. App. 174, 183 (1882) (noting that defendants who render their victims insensible should not be freed simply because the victim cannot swear positively to the act of penetration). This evidence is sufficient for the jury to have concluded that appellant caused Jane's mouth to contact his sexual organ. *See Villalon*, 791 S.W.2d at 134. Appellant's second issue is overruled.

8

## C. "On or about" Language in Indictments

In his third issue, appellant asserts that the trial court erred in charging the jury that there were no limitations periods for the offenses. Appellant argues that the "on or about" language and the instruction that there is no limitations period for the offense allowed for a non-unanimous jury verdict because the members of the jury could have convicted him even though they did not unanimously agree on the factual elements underlying any specific offense.

The jury received two separate charges relating to the two separate indictments. Both charges begin with the words: "The defendant, Cody Carr, stands charged by indictment with the offense of aggravated sexual assault of a child, alleged to have been committed on or about the 20th day of December, 2010, in Harris County, Texas." One charge defines aggravated sexual assault as "intentionally or knowingly caus[ing] the mouth of a child to contact the sexual organ of another person." The other charge defines aggravated sexual assault as "intentionally or knowingly caus[ing] the anus of a child to contact the sexual organ of another person." The jury received two separate charges detailing separate offenses. Both charges instructed the jury that its verdict must be unanimous.

The State need not allege a specific date in an indictment. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). The "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *Id.* Texas law requires that a jury reach a unanimous verdict about the specific crime the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). This means that the jury must agree upon a single and discrete incident that would constitute the commission of

9

the offense alleged. *Id.* Non-unanimity may result in certain instances when the jury charge fails to properly instruct the jury, based on the indicted offenses, and specific evidence in the case, that the verdict must be unanimous.

Non-unanimity may occur when the State charges one offense, but presents evidence that the defendant committed the charged offense on multiple but separate occasions or the State charges one offense and presents evidence of an offense committed at a different time that violates a different provision of the same criminal statute. *Id.* at 772. In the first scenario, each of the multiple incidents individually establishes a different offense and to ensure unanimity in this situation, the charge would need to instruct the jury that its verdict must be unanimous as to a single offense among those presented. *Id.* In the second scenario, the charge would need to instruct the jury that it has to be unanimous about which statutory provision, among those available, the accused violated.

In the instant cases, the jury received two separate charges and the evidence at trial was limited to evidence of two separate, discrete offenses. There is evidence of one instance in which appellant caused Jane's anus to contact his sexual organ and there is one charge related to that conduct. This charge instructed the jury that its verdict must be unanimous as to that charge. There is also evidence of one instance in which appellant caused Jane's mouth to contact appellant's sexual organ and there is one charge related to that conduct. This charge instructed the jury that its verdict must be unanimous as to this charge. There is no evidence of other actions that occurred at other times that could constitute these offenses and cause the jury to agree that either offense had occurred and disagree on the facts underlying the offense. To convict appellant of either offense, the jury had to agree on the factual elements underlying the conviction. The jury convicted appellant of both offenses. In neither case did the

10

charge allow the jury to reach a non-unanimous verdict. *See id.* at 772; *Sledge*, 953 S.W.2d at 256. The trial court did not err in providing the charges to the jury. Appellant's third issue is overruled.

## III. Conclusion

Appellant's convictions are supported by sufficient evidence. The trial court did not err in charging the jury on the statute of limitations. The judgment of the trial court is affirmed.


Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Publish — Tex. R. App. P. 47.2(b).

Print this page

# Envelope 6631779

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 08/24/2015 10:33:05 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Colin Amann |
| Firm Name | Ketterman Hedlesten Amann |
| Filed By | Colin Amann |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.09 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $3.00 |
| Total Provider Tax Fees | $0.25 |
| Grand Total | $3.34 |

## Payment

| | |
|---|---|
| Account Name | Julie A. Ketterman |
| Transaction Amount | $3.34 |
| Transaction Response | |
| Transaction ID | 10868778 |
| Order # | 006631779-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | Carr |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | 08/26/2015 | The petition for discretionary review does not contain a certification in compliance with T.R.A.P. 9.4(i)(3); the certification indicates the petition contains 4510 words |

| | | |
|---|---|---|
| Other | 03:23:02 PM | exceeding the limit of 4500. Additionally, please combine the separate parts of your petition into one contiguous file; do not electronically file a petition and the Court of Appeals opinion(s) or other appendices as separate documents[Rule 9.4(j)(4)]. You have ten days to tender a corrected petition. |

## Documents

| | | |
|---|---|---|
| *Attachments* | COA_opinion.pdf | [Original] |
| *Lead Document* | carr_pdr1.pdf | [Original] |